UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO

In Re:                                )
                                      )    **JUDGE RICHARD L. SPEER**
Catherine M. Slone                    )
                                      )    Case No. 10-31595
        Debtor(s)                     )
                                      )
                                      )

## DECISION AND ORDER

This cause comes before the Court on the Motion of the United States Trustee to Dismiss this case pursuant to 11 U.S.C. § 707(b)(1), § 707(b)(2) and § 707(b)(3). (Doc. No. 16). The Debtors filed a response to the Motion, objecting to the Dismissal of their case. (Doc. No. 24). A Hearing was then held on the matter. (Doc. No. 26).

At the conclusion of the Hearing, the Court deferred ruling on the Motion to Dismiss so as to afford the opportunity to further consider the evidence and arguments submitted by the Parties. (Doc. No. 26). The Court also afforded the Debtor the opportunity to submit updated financial information. This information has since been submitted to the Court. Based upon a review of this information, as well as the entire record of this case, the Court finds, for the reasons now explained, that the Motion of the United States Trustee to Dismiss has merit.

## FACTS

The Debtor, Catherine M. Slone, is a single woman, 45 years of age, with no dependents. On March 16, 2010, the Debtor filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. (Doc. No. 1). At the time she filed for bankruptcy relief, the Debtor was employed with the United States Postal Services. The Debtor has worked for this employer for 25 years, and expects to continue working for her present employer for the foreseeable future.

**In re: Catherine M. Slone**
**Case No. 10-31595**

From her employment, the Debtor earns a gross monthly salary of $5,344.13, equating to $64,129.56 annually. The Debtor did not disclose any other source of income. From her salary, the Debtor reported $1,867.66 in monthly withholdings, including a $133.73 deduction for life insurance, leaving the Debtor with a net monthly income of $3,476.47.

At the time she filed her bankruptcy petition, the Debtor reported that she had $3,427.17 in necessary, monthly expenses, thus leaving the Debtor with a slight surplus, $49.30 per month, in her household budget. After the Hearing held on Dismissal, however, the Debtor revised her necessary, monthly expenses upward to $3,856.67, thereby leaving the Debtor with a deficit of $380.20 in her monthly budget. Although not a complete list, the Debtor's revised budgetary figures included the following expenditures:

| | |
|---|---|
| Telephone | $45.20 |
| Cell Phone | $65.00 |
| Home Maintenance | $350.00 |
| Recreation | $130.00 |
| Auto Insurance | $255.00 |
| Student Loan | $444.00 |
| Lawn Maintenance | $60.00 |
| Snow Removal | $60.00 |

A few additional matters regarding the Debtor's income and expenses were also brought to the Court's attention.

First, the Debtor disclosed that she had $225.00 per month deducted from her salary as a "loan repayment for a health savings plan." (Doc. No. 33, at pg. 2). In addition, and although not

Page 2

**In re: Catherine M. Slone**
**Case No. 10-31595**

itemized, the Debtor disclosed that she makes voluntary contributions to a retirement account. Finally, it was brought out at the Hearing that, for the 2009 tax year, the Debtor received a refund of between $2,000.00 and $3,000.00, and that a similar refund was expected for the 2010 tax year.

At the time she filed for bankruptcy relief, the Debtor reported that she had assets worth $116,408.00. The Debtor's assets consisted primarily of her residence, valued at $95,000.00, and a 2008 Ford Mustang valued at $10,000.00. The Debtor reported that both these assets are fully encumbered. In her statement of intention, the Debtor set forth that she intended to reaffirm the obligations secured against both her home and vehicle.

On the other side of the equation, the Debtor set forth that she had liabilities totaling $192,151.02. Of her liabilities, $107,541.00 constituted secured debt, with the remaining debt, totaling $84,610.02, being unsecured.

## DISCUSSION

This matter is before the Court on the Motion of the United States Trustee to Dismiss. Matters concerning the dismissal of a case, which affects both the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(J)/(O). As a core proceeding, this Court has been conferred with the jurisdictional authority to enter a final order in this matter. 28 U.S.C. § 157(b)(1).

The Motion of the United States Trustee ("UST") to Dismiss is brought pursuant to 11 U.S.C. § 707(b)(1), § 707(b)(2) and § 707(b)(3). These sections operate together, with § 707(b)(1) first setting forth the foundational mandate, providing that, where the granting of relief under Chapter 7 would be an abuse, the debtor's case is to be dismissed. In the specific language of § 707(b)(1):

Page 3

> (b)(1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

This provision serves the purpose of preventing debtors from simply walking away from their legal obligations by limiting Chapter 7 relief to only those debtors truly in "need" of such relief. *In re Oot*, 368 B.R. 662, 670 (Bankr. N.D.Ohio 2007).

Sections 707(b)(2) and 707(b)(3) then set forth separate methodologies by which a determination of abuse is to be assessed under § 707(b)(1). First, under an objective 'means test' formula prescribed by § 707(b)(2), abuse will be presumed to exist when a 'disposable income' threshold is exceeded. In the alternative, § 707(b)(3) requires a court to undertake a subjective assessment of a debtor's financial situation, providing that abuse should be found to be present if it is determined that the debtor either filed their petition in bad faith or when the totality of the circumstances surrounding the debtor's financial situation demonstrate abuse. If either of the methods set forth in § 707(b)(2) or § 707(b)(3) then result in a finding of abuse, the case becomes ripe for dismissal under § 707(b)(1). *In re Longo*, 364 B.R. 161, 164 (Bankr. D.Conn. 2007).

For the two methodologies prescribed in § 707(b) for assessing abuse, the Court, having reviewed the Debtor's financial situation, finds that the dismissal of this case is warranted under § 707(b)(3). In full, this provision provides:

> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider–
>
> (A) whether the debtor filed the petition in bad faith; or

Page 4

> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

For purposes of this provision, no allegations were made by the UST that the dismissal of the Debtor's case was warranted on account of "bad faith" as provided in § 707(b)(3)(A) – a position which this Court has no reason to question. However, the position of the UST, that the Debtor's case should be dismissed based on the totality of the Debtor's financial circumstances, as provided in § 707(b)(3)(B), is supported by the weight of the evidence in this case.

In bringing this action to dismiss the Debtor's case in accordance with § 707(b)(3)(B), the UST raised one overall ground for its position: "the Debtor has the ability to repay a portion of her unsecured debt." (Doc. No. 16, at pg. 1). This ground for dismissal, regarding a debtor's ability to repay their unsecured debts, is a prime and often dispositive consideration when determining whether, under the "totality of the circumstances" standard of § 707(b)(3)(B), a case should be dismissed for abuse. *In re Masella*, 373 B.R. 514, 518 (Bankr. N.D.Ohio 2007). In *In re Krohn*, the Sixth Circuit Court of Appeals, in addressing § 707(b), stated:

> Among the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings. That factor alone may be sufficient to warrant dismissal. For example, a court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income permits liquidation of his consumer debts with relative ease.

*In re Krohn*, 886 F.2d 123, 126 (6th Cir.1989).

A frequently utilized measure, when determining whether a debtor has the ability to repay their debts, is to ascertain whether, under a hypothetical Chapter 13 repayment plan, the debtor has the ability to repay a meaningful percentage of his or her unsecured debts. *In re Behlke*, 358 F.3d

Page 5

**In re: Catherine M. Slone**
**Case No. 10-31595**

429, 434-35 (6th Cir. 2004). A debtor's ability to repay their debts is normally ascertained by reference to the amount of "disposable income" the debtor has available, and whether that income could adequately fund a Chapter 13 plan. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 435 (6th Cir. 2004). For purposes of bankruptcy law, the term "disposable income" is defined, generally, as that income received by a debtor which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. *Id., citing* 11 U.S.C. § 1325(b)(2).

Within this definitional framework, the Debtor, relying on her revised budgetary figures, had put forth the position "that she does not have the income to proceed in a Chapter 13." (Doc. No. 33, at pg. 2). These revised figures show a monthly shortfall in the Debtor's monthly budget of $380.20.

However, whether a debtor has "disposable income" available to repay their debts is made exclusively by the court, and is thus not dependent on the financial figures put forth by the debtor or any other party. *In re Scarberry*, 428 B.R. 403, 407 (Bankr. N.D.Ohio 2009). The Court is, thus, not required to accept, at face value, the income and expense figures put forth by a debtor when computing the debtor's "disposable income." Rather, in its role as the trier-of-fact, the Court is under a duty to scrutinize a debtor's expenses, and make downward adjustments where necessary, so as to ensure that the debtor's expenses are reasonable. Similarly, when determining a debtor's "disposable income," a court may impute income to the debtor when it would be equitable to do so – *e.g.*, when the debtor is voluntarily underemployed. *In re Gonzalez*, 378 B.R. 168, 173 (Bankr. N.D.Ohio 2007).

In this matter, insofar as it concerns the amount of "disposable income" available to the Debtor for purposes of § 707(b)(3)(B), a number of adjustments are necessary. First, in the absence of unique circumstances, with none being presented in this case, this Court has not permitted debtors to expense payments made to repay loans taken against employer-sponsored benefit plans. *See, e.g., Id.* at 174. The rationale: the debtor is, in essence, repaying a loan to himself, thus making it unfair for the debtor's creditors to bear the burden of such an expense. *Id.* In this same way, the Court,

Page 6

In re: Catherine M. Slone
Case No. 10-31595

when determinating the level of "disposable income" available to a debtor, has generally not allowed debtors to make voluntary contributions to retirement accounts. *See, e.g., In re McClellan*, 428 B.R. 737, 743 (Bankr. N.D.Ohio 2009).

Accordingly, the Debtor's deduction of $225.00 per month against her "disposable income" for the repayment of a loan taken against a health savings plan will not be allowed. Nor will the Court allow the Debtor to expense against her "disposable income" any voluntary contributions she is making to a retirement account. The same result follows for the Debtor's $444.00 per month student-loan payment.

In *In re Kaminski*, this Court explained:

> . . . in the context of a § 707(b)(3) action, this Court has not viewed favorably debtors who seek to allocate their financial resources to fully pay a student loan while not doing the same for their other unsecured creditors. The reason: it goes against the core principle of bankruptcy that similarly situated creditors are entitled to an equal distribution of estate assets. The Debtors' position, that payments on student-loan obligations are entitled to special treatment because, being nondischargeable debts, they are not voluntary has been rejected by the Court . . . .
>
> The fact . . . that an obligation to pay a debt will survive bankruptcy, does not, on that basis alone, mean that a debtor has the right to treat the claim differently. Otherwise, all nondischargeable debts would be entitled to favorable treatment, including those debts which arise from a debtor's wrongful conduct – *e.g.*, fraud, embezzlement and larceny. 11 U.S.C. § 523(a)(2)/(4).

387 B.R. 190, 197 (Bankr.N.D.Ohio 2008) (internal quotations and citations omitted). *See also In re Reimer*, No. 07-32787, 2008 WL 495537 (Bankr. N.D.Ohio 2008).

The Court also questions the necessity of a number of the Debtor's other expenses. Foremost, the Debtor, being single and having no dependents, did not offer a viable basis for the need to

Page 7

In re: Catherine M. Slone
Case No. 10-31595

allocate $133.73 per month in her budget for life insurance. Also, in the absence of supporting documentation, with none being offered, the allocation of $255.00 per month to insurance a $10,000.00 automobile seems inflated. A like question also arises with regards to the Debtor's communication expenses.

The Debtor allocates in her monthly budget approximately $110.00 to maintain two telephone systems: a land line and a cell phone. While this amount is not necessarily unreasonable, there would appear to exist a little room for the Debtor to economize in this area. As this Court previously noted in a similar type of situation, the question to ask is whether "there exist any less expensive alternatives? Requiring a debtor to make such a showing is not too much to ask. Creditors should not be expected to pay for steak, when hamburger would do." *In re Felske*, 385 B.R. 649, 657 (Bankr. N.D.Ohio 2008).

Finally, the Debtor's allocation of $60.00 per month for lawn care and then another allocation of $60.00 per month for snow removal does not appear to be a proper accounting. This is not to say that such expenses are not reasonably necessary, with the Court accepting at face value the Debtor's position that she is no longer able to physically perform these tasks. However, it would be a rare occasion that both services, mowing and snow removal, would be needed in the same month. The Debtor, thus, appears to have double counted the expense associated with such services.

Overall then, when calculating the Debtor's "disposable income" for purposes of § 707(b)(3)(B), a number of adjustments must be made to the expenses claimed by the Debtor. While it is impossible at this time to state with absolute precision, such adjustments could add $800.00 or more to the Debtor's "disposable income," providing the Debtor with a meaningful level of positive income flow. As such, the Debtor's need to simply "walk away" from her debts becomes less evident. Other considerations further support the Debtor's lack of "need" for Chapter 7 relief.

Page 8

In re: Catherine M. Slone
Case No. 10-31595

One, the Debtor has understated her net monthly income. In 2010, the Debtor received a tax refund for the 2009 tax year of between $2,000.00 and $3,000.00, and expects a like refund for the 2010 tax year. It is, therefore, safe to say that, on the low end, the Debtor is overpaying her tax obligations by $200.00 per month. This Court has repeatedly stressed that such funds are a source of revenue which a debtor can utilize to repay their unsecured creditors. *See, e.g., In re Jordan*, 428 B.R. 430, 436-37 (Bankr. N.D.Ohio 2010); *In re Speith*, 427 B.R. 621, 626 (Bankr. N.D.Ohio 2009); *In re Durczynski*, 405 B.R. 880, 885 (Bankr. N.D.Ohio 2009); *In re Violanti*, 397 B.R. 852, 857 (Bankr. N.D.Ohio 2008).

The Debtor's personal circumstances also bear the hallmarks of a person who should be required to attempt a plan of reorganization. The Debtor has stable employment, with a meaningful level of income; the Debtor, from all appearances, is in good health; there is also no evidence that the Debtor was forced to file bankruptcy because of unforeseen or catastrophic events. Rather, the Debtor appears to have filed for Chapter 7 relief because of a long and continuous accumulation of consumer debts. All these considerations were held by the Sixth Circuit Court of Appeals in *In re Krohn* to be relevant when assessing the propriety of dismissing a case under § 707(b). 886 F.2d at 126-27.

In support of her "need" for Chapter 7 relief, the Debtor relied heavily on future financial strains that will be placed on her budget, pointing to these events and contingencies: a loss of overtime; the need to make repairs to her home; and an increase in home insurance. Undoubtably, such issues need to be addressed. At the same time, these facts do not change the underlying equation that the Debtor, after making those adjustments to her income and expenses as discussed, still has adequate financial resources at her disposal to make an attempt to repay her creditors. In this way, the Court has previously noted that "Chapter 13 plans of reorganization are sufficiently malleable to handle such contingencies." *In re Jordan*, 428 B.R. at 437.

Page 9

In re: Catherine M. Slone
Case No. 10-31595

The burden of proof to support dismissal based upon § 707(b)(3)'s "totality of the circumstances" standard, and a debtor's ability to pay, is upon the movant, the UST. *In re Baker*, 400 B.R. 594, 597 (Bankr. N.D.Ohio 2009). For those reasons set forth herein, the UST has met this burden. As such, § 707(b)(1) requires that this Court dismiss this case unless the Debtor timely coverts her Chapter 7 case. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that, subject to the Debtor's election to convert this case, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b)(1) and § 707(b)(3), be, and is hereby, GRANTED.

***IT IS FURTHER ORDERED*** that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business on Friday, October 8, 2010, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

Dated: September 24, 2010

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 10

10-31595-rls    Doc 35    FILED 09/24/10    ENTERED 09/24/10 16:20:14    Page 10 of 11

# CERTIFICATE OF SERVICE

Copies were mailed this 24th day of September 2010 to:

Fifth Third Mortgage Company
5001 Kingsley Dr
1MOBBW
Cincinnati, OH 45277

Fifth Third Bank
P.O. Box 829009
Dallas, TX 75382

Hilary B Bonial
9441 LBJ Freeway #350
Dallas, TX 75243

Catherine M Slone
3011 123rd
Toledo, OH 43611

Abbey M. Flynn
425 Jefferson Ave. Suite 910
Toledo, OH 43604

Linda Maria Battisti ust21
Office of the US Trustee
201 Superior Avenue #441
Cleveland, OH 44114

Louis J Yoppolo
1200 Edison Plaza
300 Madison Ave
Toledo, OH 43604-1556

/s/Jennifer S Huff
Deputy Clerk, U.S. Bankruptcy Court